M.W. ETTINGER, INC., Respondent,

v.

Thomas L. ANDERSON, Individually and d.b.a. B.A.T. Leasing, Appellant,

and

Edson Express, Inc., Garnishee.

No. C5–84–1539.

Court of Appeals of Minnesota.

Jan. 8, 1985.

Stanley C. Olsen, Jr., Ronald L. Snelling, Olsen, Snelling & Christensen, P.A., Edina, for respondent.

Marvin L. Gurewitz, Soules, McKendrick, Gurewitz, Glew & Magnuson, Ltd., Minneapolis, for appellant.

Heard, considered, and decided by POPOVICH, C.J., and WOZNIAK and HUSPENI, JJ.

## OPINION

WOZNIAK, Judge.

This appeal from an order sustaining a prejudgment garnishment challenges the constitutionality of the Minnesota garnishment statute, Minn.Stat. ch. 571. Further, it challenges the manner in which the funds were garnished. We affirm.

## FACTS

The appellant is Thomas L. Anderson, individually and d/b/a B.A.T. Leasing. B.A.T., a Wisconsin truck leasing firm, is apparently a sole proprietorship owned by Anderson's wife Barbara. The respondent, M.W. Ettinger, Inc., is a St. Paul trucking company. Edson Express, Inc., a Colorado company doing business in St. Paul, is the garnishee.

In the underlying action, Ettinger claims to have advanced Thomas L. Anderson a $14,662.59 non-interest bearing loan for the benefit of B.A.T., which Anderson agreed B.A.T. would repay in installments. B.A.T. failed to make the payments; Ettinger filed a complaint on March 20, 1984. B.A.T. answered, denying ever receiving the loan.

After Ettinger learned B.A.T. was about to terminate its business relationship with Edson, Ettinger obtained an ex-parte order authorizing service of a prejudgment garnishment upon Edson Express on June 15, 1984.

On June 24, 1984, a probable cause for garnishment hearing was held, with both parties present. On July 26, 1984, the trial court issued an order to continue the garnishment based upon its determination that in all likelihood the funds would otherwise go beyond the borders of Minnesota and the jurisdiction of any court in this state.

The garnished check in the sum of $5,896.60 was originally deposited in B.A.T.'s business account. After Ettinger informed Edson of this litigation, Edson stopped payment on the check, reissued it, and sent it to their St. Paul office where the check is being held pursuant to the garnishment proceeding.

## ISSUES

1. Did the trial court err in determining that Minn.Stat. § 571.41 (1982 and Supp. 1983) provides adequate due process safeguards?

2. Did the trial court err in determining that Thomas L. Anderson is a partner by estoppel of B.A.T.?

3. Did the trial court err in concluding B.A.T. was about to take funds out of state which might be necessary to satisfy a judgment?

4. Is the manner in which the funds were secured tantamount to fraud?

## ANALYSIS

### I.

B.A.T. claims Minn.Stat. § 571.41, which authorizes prejudgment garnishment, is unconstitutional pursuant to *Olson v. Ische*, 330 N.W.2d 710 (Minn.1983). B.A.T.'s reliance on *Olson* is misplaced.

*Olson* held two provisions of the attachment statute, Minn.Stat. § 570.02, subd. 2(b)(1) and subd. 2(b)(2)(ii) (1982), unconstitutional in that they did not comply with due process standards for prejudgment, prehearing seizure of property as set forth in *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

Five procedural safeguards were emphasized by the *Mitchell* court:

1. The creditor was required to allege in a verified affidavit specific facts, rather than conclusory allegations in

statutory language, showing his entitlement to prehearing sequestration.

2. A showing of entitlement under the statute had to be made to a judge and judicial authorization obtained.

3. The creditor was required to post a sufficient bond to protect the debtor against damages should the writ be vacated later.

4. After seizure, the debtor could demand an immediate hearing where the creditor was compelled to prove the grounds underlying the writ.

5. The debtor could regain possession without seeking to vacate the writ by filing his own bond.

*International State Bank v. Gamer*, 281 N.W.2d 855, 858 (Minn.1979).

Minn.Stat. § 570.02, subd. 2(b)(1), allowed prejudgment attachment without notice or hearing on a mere showing that the debtor owned or had an interest in any property which was present within the state. The debtor was given no opportunity to present his position to the court, nor was he given any opportunity to challenge the existence of probable cause for the continuation of the attachment.

Minn.Stat. § 570.02, subd. 2(b)(2)(ii), the second attachment provision invalidated in *Olson*, provided for prejudgment attachment upon an allegation that the debtor had assigned, disposed of, or secreted property, regardless of the debtor's intent. B.A.T. analogizes two provisions of the garnishment statute, Minn.Stat. § 571.41, subd. 4 and subd. 2(b)(1) (1982), to the unconstitutional attachment provisions, claiming they are equally unconstitutional. This comparison is without merit; distinctions can be drawn.

Unlike its unconstitutional attachment counterpart, Minn.Stat. § 571.41, subd. 4 is replete with due process safeguards: the creditor must file an affidavit which sets forth in detail the specific facts upon which the creditor bases his claim of entitlement to garnishment; a hearing to determine whether probable cause to continue the garnishment action exists must take place within seven days of the date of the service of the garnishee summons; and the creditor has the burden of giving notice to the debtor, scheduling the hearing, and showing that probable cause exists for continuation.

Further, subd. 2(b)(1) of the garnishment statute, which allows for garnishment upon a showing that property is about to be removed from the state, regardless of the debtor's intent, can be distinguished from subd. 2(b)(2)(ii) of the attachment statute.

Whether a showing of intent to defraud is necessary to comport with due process requires a balancing of the debtor's and creditor's interests under the statute. *International State Bank v. Gamer*, 281 N.W.2d 855, 860 (Minn.1979). Thus, where the debtor either owns property or is attempting to sell property located within the state, the necessity to determine intent is more important; absent the debtor's intent to defraud, the court and the creditor will continue to have access to the property or the person post judgment. However, the question of intent is not as significant where, as in this case, the creditor demonstrates that the debtor is likely to remove property from the state; under these circumstances, regardless of the debtor's intent, the property will then be beyond the reach of the court and the creditor. A showing of intent to defraud is not necessary to comport with due process in light of the special circumstances surrounding a debtor about to remove property from the state. This is especially true in view of the many due process safeguards the Minnesota garnishment statute provides for the debtor.

## II.

The garnishment has attached funds owing to B.A.T. Leasing. Thomas Anderson, who signed for the loan, claims the prejudgment garnishment should be vacated on the basis that he is not a partner in B.A.T. Leasing.

When a person, by words or conduct, represents himself as a partner with one or more persons, not actual partners, he is liable to any person who, on the faith of that representation has given credit to

the apparent partnership. Minn.Stat. § 323.15, subd. 1 (1982). Furthermore, a representation will also bind any person who consents to the representation to the same extent as though they were partners in fact. Minn.Stat. § 323.15(2) (1981).

■ Anderson entered into an agreement with Ettinger in January 1984. He signed B.A.T. Leasing checks, he had the same address as B.A.T. Even after B.A.T. Leasing took over the performance of Anderson's agreements, Anderson continued to meet with Ettinger regarding the terms of the agreement. Finally, Barbara Anderson, d/b/a B.A.T. Leasing, acquiesced in Anderson's conduct.

Given these circumstances, Ettinger reasonably believed that Thomas Anderson was a partner of B.A.T. Leasing. Accordingly, Thomas Anderson and Barbara Anderson, d/b/a B.A.T. Leasing, are estopped from denying that Thomas Anderson was a "partner in fact" of B.A.T. Leasing.

### III.

■ The lower court issued the garnishee summons because it determined that B.A.T. was about to take the garnished property out of Minnesota, pursuant to Minn.Stat. § 571.41, subd. 2(b)(1) (1982). The garnishee summons was served on Edson's St. Paul office. The funds are being held there. B.A.T. claims that the funds garnished were earmarked to pay Minnesota debts, and therefore they would not have been taken outside the state. This claim is without merit.

B.A.T. is located in Wisconsin. Even if the garnished funds would ultimately have been used to pay Minnesota debts, the money certainly would have been processed in Wisconsin. The trial court was correct in concluding that the funds, in all likelihood, would go beyond the borders of this state.

### IV.

■ Appellants claim fraud was involved in the relocation of the garnished funds within the State of Minnesota.

There is no doubt that Ettinger's purpose in requesting reissuance of the check was to secure judgment if granted. However, the decision to do so was exclusively that of the garnishee. The funds were at all times under Edson's complete control.

Ettinger's request does not constitute fraud under the facts of this case; nor does it in any way affect the legal issues herein.

### DECISION

The Minnesota garnishment statute, with all of its procedural safeguards, protects the rights of both debtors and creditors alike, and provides for a fair and orderly means of preserving a claim pending its ultimate disposition.

Funds owing to a Wisconsin truck leasing firm were properly garnished as, in all likelihood, they otherwise would have gone beyond the borders of Minnesota.

Creditor's request of garnishee to relocate funds within Minnesota for purposes of securing judgment if granted was not tantamount to fraud.

Affirmed.